PEOPLE v. KINNEY.

1. INTOXICATING LIQUORS—LOCAL OPTION—SALE OF CIDER—PRE-
SERVED SAMPLE—PERMITTING JURY TO TASTE.
   Where, in a prosecution for selling fermented liquor contrary
   to the local-option law, a sample of the cider alleged to have
   been sold, which had been preserved in a bottle by a witness
   for the prosecution, was produced at the trial, the witness
   testifying that it was in about the same condition as when
   sold, it was not error to admit the same in evidence, and to
   permit the jury to taste it.

2. SAME — EXPERT WITNESSES — QUALIFICATIONS — PROVINCE  OF
COURT.
   It is the court's province to determine the qualifications of
   nonprofessional witnesses to express an opinion; and, where
   a witness is offered to testify as to the process of fermentation
   in cider, it is proper to require him to state his experience
   and observation, in order to enable the court to judge of the
   admissibility of his opinion.

3. SAME—STAGE OF FERMENTATION—IMMATERIAL INQUIRY.
   In a prosecution for selling a fermented liquor, i. e., cider, con-
   trary to the local-option law, it is an immaterial inquiry
   whether or not the cider had reached a stage of fermentation
   which rendered it intoxicating.

Exceptions before judgment from Van Buren; Smith, J.
Submitted June 12, 1900.    Decided June 18, 1900.

Matthew Kinney was convicted of violating the local-
option law.    Affirmed.

*T. J. Cavanaugh,* for appellant.

*James E. Chandler,* Prosecuting Attorney, for the
people.

LONG, J.   The local-option law is in force in Van Buren
county.   The respondent was convicted under an informa-
tion charging him with having on the 5th day of October,

1899, at the township of Decatur, Van Buren county, sold and furnished to S. C. Maybury and Edward Bass a certain quantity of fermented, spirituous, and intoxicating liquor, to wit, one gallon of hard cider.

The people offered proofs tending to show that, on the evening of October 5th, Maybury and Bass went where respondent resided, and there, in his cellar, purchased from him one gallon of fermented cider, paid for it, and went back to the village of Decatur. One Barney Mahoney testified that he followed Maybury and Bass to the respondent's place, saw them come out of the place, and followed them to Decatur village, where he tasted the cider; that it was hard cider,—fermented cider; that he then took some and corked it up in a bottle. Maybury and Bass testified that, after tasting some of the cider, they asked respondent if he did not have some that was harder; that he gave them some, and that thereafter Mahoney tasted it and corked it up in a bottle; that they did not ask for sweet cider, but hard cider. On the trial the bottle of cider corked up by Mahoney was produced, and Mahoney testified that it was in about the same condition as when he put it in the bottle. The respondent testified that this cider was made September 28, 1899; that Maybury and Bass asked for a gallon of cider to be used in making mince pies; that he furnished it, and received 15 cents therefor; that it was cider made on September 28th, and was not hard cider, but sweet cider. He also called other witnesses who testified that it was made at that time, and was sweet cider.

After Mahoney had given his testimony, the prosecution offered the bottle of cider in evidence. Counsel for respondent objected to this offer on the ground that it was incompetent, irrelevant, and immaterial. The court said:

"Unless the evidence in this case shows that the contents of this bottle is in the same condition it was on October 5th, it would be of no value as evidence; but, if the evidence has any tendency to show it is in the same condition, it would be admissible."

It was received in evidence, and the court then said: "There is a tumbler, gentlemen, if you want to taste of it, any of you."

Respondent's counsel objected to these remarks of the court, instructing the jury that they might taste it. The argument of respondent's counsel here is that if the jury, by tasting it, smelling, or drinking it, as they were ordered by the court, thereby acquired knowledge or formed opinions of its properties, as to whether it was hard or fermented cider, those tasting or smelling it could not give evidence to their fellow jurors without being sworn. There is nothing in the record showing or tending to show that any of the jurors smelled or drank of it, nor is there any evidence that the bottle was placed in their hands for examination. The record is entirely silent upon that subject. But, even if it had been handed them and they had tasted it, we think it would not have been error. The testimony of Mahoney, who put it in the bottle, tended to show that it was in about the same condition as when sold by the respondent.

It is claimed that the court erred in refusing to permit the witness Mott to answer certain questions put to him by respondent's counsel. Mr. Mott testified:

"I always handle a little cider for my own use. Cider put in the kind of bottle in evidence in this case would grow harder from day to day.

"*Mr. Chandler:* I object to it as incompetent, irrelevant, and immaterial, until this man is shown to be an expert.

"*Mr. Cavanaugh:* He is as much of an expert as Barney Mahoney is.

"*Mr. Chandler:* I move to strike out the answer.

"*The Court:* I should think that would be a matter for an expert. I don't think that the evidence shows that this witness is an expert.

"*Mr. Cavanaugh:* Does your honor rule the question out?

"*The Court:* Yes.

"*Mr. Cavanaugh:* I will take an exception to the ruling of the court.

"*Witness:* I have handled cider to some extent, and have kept the same. I have watched it to know how it conducted itself from time to time.

"*Q.* I will now ask you what do you say as to whether or not cider that is put in that bottle on the 5th day of October, in about that quantity, would change so as to grow harder from that until the present.

"*Mr. Chandler:* I renew the objection that I made before. This man is not competent to testify on that question.

"*The Court:* I think, before the witness can give an opinion upon that question, he must state in the presence of the jury what experience he has had on that subject.

"*Mr. Cavanaugh:* He has already stated, your honor, that he has handled the stuff, and had occasion to watch it and know how it worked.

"*The Court:* He might have occasion to watch it, and not watch it, even. He has not shown that he has had any particular experience. Probably he has had.

"*Mr. Cavanaugh:* I take an exception to the ruling of the court. Now, I propose to show by several other men, along that same line, that this cider would grow harder from time to time, and I am excluded from doing so by the ruling of the court.

"*Mr. Chandler:* No; I don't understand that you are excluded from doing anything of the sort.

"*The Court:* I will rule on the questions as they come up. No; instead of excluding you from showing that, I allow you to.

"*Mr. Cavanaugh:* You have not so indicated.

"*The Court:* Well, I indicate now that you can show by competent witnesses, but you cannot show by incompetent witnesses; and, before you can take the opinion of a witness on this subject, the witness must appear to have had sufficient experience so that he can properly be held to be an expert on that subject.

"*Mr. Cavanaugh:* That is not the question for the court to pass upon. It is a question for the jury to determine what weight they should attach to the testimony, and I take an exception to the ruling of the court on that proposition, as well as the other.

"*The Court:* The court will instruct the jury as to the law."

The court was not in error in this ruling. It is the province of the court to determine the qualifications of

nonprofessional witnesses to express an opinion. The witness must first state the facts and his means of observation, and the court can then decide whether the facts testified to, and his means of observation, are such as to justify the expression of an opinion. A witness who is not an expert is not allowed to express an opinion unless he has a personal knowledge of the facts on which the opinion is based. Here the court expressly indicated that respondent could introduce the testimony excepted to, but said that the witness must first show his experience and observation. That was to enable the court to judge of the admissibility of the opinion in the first instance. Counsel refused to follow up the examination suggested by the court. We think no error was committed.

It is claimed that the court erred in the following portion of the charge:

"Now, the question for you to determine is, Was this cider in a state of fermentation on the 5th day of October, when these two men got it? If it was what is commonly called 'sweet cider' (that is, cider that had not begun to ferment), there is no offense proved against him. It is no offense to deliver a man a gallon of cider that is not commencing to ferment; but if it has commenced to ferment, and is in any stage of fermentation, then, under the law, it is an offense to sell it or furnish it to another. I do not know that this word 'fermentation' needs any definition. It is a term you well understand the meaning of. Sometimes we say cider has 'begun to work.' It means just about the same thing. The terms 'hard cider' and 'sweet cider' have been used by counsel quite a little in their talk to the jury and in the testimony. It is not a question, really, whether it was sweet cider or hard cider; it is a question whether this cider, on the 5th day of October last,—this gallon of cider,—whether it was fermented or not. Of course, if you mean, by 'fermented cider,' hard cider, why, then, the question is the same. It is not necessary that the cider should be intoxicating. Cider, after it reaches a certain stage of fermentation, is regarded, and is as a matter of fact, intoxicating; but cider may commence to ferment, and be in a stage of fermentation, so that it could be called 'fermented cider,' and yet it might not be intoxicating. It is not necessary

that this cider should have gone to that degree of fermentation to make it intoxicating; all that is necessary is that it should be fermented.　　Was this cider fermented on the 5th day of October?　　It is not a question of degree, providing it is fermented."

In *People* v. *Adams*, 95 Mich. 541 (55 N. W. 461), it appeared that the court instructed the jury that, if the cider sold was fermented, the respondent should be convicted.　　It was there said:

"The statute prohibits the sale of fermented cider, and forecloses inquiry as to whether cider which is fermented is intoxicating, whatever the stage of fermentation."

· We think the charge of the court was not erroneous. It conveyed the idea to the jury, simply, that they might convict if they found the cider in any stage of fermentation, though it might not then be intoxicating.

We find no error in the record.　　The conviction must be affirmed.

The other Justices concurred.