## BRYAN REED V. TERRITORY.

No. 2061, Okla. T. Opinion Filed December 10, 1908.

(98 Pac. 583.)

1. **INDICTMENT AND INFORMATION—Language of Statute.** When an indictment uses substantially the same language in charging an offense as is used in the statute in creating the offense, the indictment is sufficient.

2. **SAME—Jury—Motion to Set Aside Indictment—Sufficiency—Affidavit—Selection and Drawing of Panel—Officer Who may Act as Deputy.** (a) A general allegation that the grand jury which found the indictment was not properly and legally drawn is too indefinite and uncertain to require notice.

(b) Under the act of Congress of February 9, 1906, 34 Stat. 11, c. 155, a deputy clerk could perform the purely ministerial duties directed to be performed by the clerk of the court, in the matter of recording the list of the jurors upon the journals of the court, and certifying to the correctness thereof.

(c) An application to take evidence to sustain a motion to set aside an indictment, upon the ground that the jury was not properly drawn and impaneled, must be supported by an affidavit in which the allegations of the motion are alleged to be true.

(d) It is not error to overrule a motion to set aside an indictment, when the facts alleged in the motion are not sufficient to show that the motion should be sustained, if proven to be true.

3. **SAME—Pleas in Abatement—Pendency of Other Indictment or Information—Continuance — Grounds — Sufficiency of Application.** (a) The fact that an indictment or information is pending against a defendant will not, of itself, prevent a grand jury from finding another indictment against the defendant for the same offense.

(b) The pendency of an indictment or information against a defendant, when there has been no jeopardy upon it, cannot be pleaded, either in abatement or bar to a second indictment or information for the same offense.

(c) The pendency of an indictment or information, when there has been no jeopardy upon it, cannot be set up as ground for continuance, when trial is sought on a new indictment or information presented against the defendant for the same offense.

Statement of Facts.

(d)   An application for a continuance should allege that the defendant could not prove, by other witnesses, the same facts which he desires to prove by the absent witness, unless the testimony of the absent witness is intrinsically more valuable than that of the witnesses by whom the same facts could be proven, and then the facts which make this true must also be stated in the application.

(e)   An application for a continuance, which consists of a statement of negative conclusions of fact, is not sufficient.

4.   CRIMINAL LAW—Evidence by Inspection by Jury—Contents of Bottle.  It is not error to permit a jury to inspect, look at, and smell the contents of a bottle which has been properly identified and admitted in evidence and is alleged to contain whisky.

5.   SAME—Evidence—Judicial Notice—Geographical Facts.  (a)  Courts of this state take judicial notice of the boundaries of the state and of the counties in the state, and also of the geographical locations and positions of the towns and cities within their jurisdictions.
(b)  See sufficient proof of venue.

6.   INTOXICATING LIQUORS—Sale Without License—Evidence—Sufficiency.  See case where there was sufficient proof on part of the state of the fact that the defendant did not have license to retail malt, spirituous, or vinous liquors.

(Syllabus by the Court.)

*Appeal from District Court, Payne County; J. H. Burford, Judge.*

Bryan Reed was convicted of selling intoxicating liquor without a license, and appealed to the Supreme Court of Oklahoma Territory, whence the cause was transferred under the Constitution of Oklahoma and the enabling act to the Supreme Court of that state, and from that court to the Criminal Court of Appeals. Affirmed.

Bryan Reed (hereinafter called defendant) was convicted in the district court of Payne county on the 11th day of October, 1906, of the offense of having sold intoxicating liquor at retail without first having obtained a license therefor. A motion for a new trial was made and overruled, and on the 1st day of November, thereafter, defendant was sentenced by the court to pay a fine of $300 and costs. An appeal was taken to the Supreme Court of Oklahoma Territory. Upon the admission of the state of Oklahoma into the Union, under the terms of the Constitution and the enabling act, the case was transferred to the Supreme Court of the state. When the Criminal Court of Appeals was created, as di-

rected by law, the Supreme Court transferred the case to this court.

*Burdick & Reece,* for appellant.—

On question of error in permitting jury to smell bottle in evidence: *State v. Lindgrove,* 1 Kan. App. 51, 41 Pac. 688; *Wadsworth v. Dunnam,* 117 Ala. 661, 23 So. 699; *State v. Eldred,* 8 Kan. App. 625, 56 Pac. 153; *State v. Reynols,* 5 Kan. App. 519. 47 Pac. 573; *State v. Toggins,* 10 Kan. App. 455, 62 Pac. 247.

On question of burden of proving non-existence of license: Wharton on Criminal Evidence, 720; *Garver v. Territory,* 5 Okla. 342; *United States v. Nelson,* (1886) 29 Fed. 202; *Pendergast v. City of Peru,* 20 Ill. 51 (10 Peck); *State v. Schwerter,* 27 Kan. 449; *Commonwealth v. Moglan,* 119 Mass. 109.

*W. C. Reeves,* Asst. Atty. Gen., and *Fred S. Caldwell,* for the Territory.

FURMAN, PRESIDING JUDGE (after stating the facts as above.) The defendant complains that the trial court erred in overruling his demurrer to the indictment. The specific point relied upon is that the indictment charges that the defendant did sell at retail, for the price of 25 cents, to James Hoggatt "one half-pint of spirituous liquors, to-wit, whisky, without first having complied with the provisions of law and obtained a license as a vendor of malt, vinous, and spirituous liquors."

The statute upon which the indictment is based is in this language:

"Any person who shall sell at retail or give away upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks without first having complied with the provisions of this act, and obtained a license as herein set forth," etc. (Wilson's Rev. & Ann. St. 1903, § 3407.)

While it is true that the exact language of the statute is not followed in the indictment, yet the words used are of similar and equal import with those used in the statutes, and the indictment substantially charges the offense named in the statute, and is therefore sufficient. *Weston v. Territory, ante,* p. 407.

Second. The defendant complains of the action of the trial

court in refusing to sustain his motion to dismiss the indictment upon the ground that the grand jury was not regularly drawn. The general charge that the grand jury was not properly and legally drawn is too uncertain and indefinite to require notice. The specific allegations of irregularity state that the deputy clerk performed duties which, under the statute, should have been discharged by the clerk. It is true that section 1 of the act of Congress of February 9, 1906, 34 Stat. 11, c. 155, providing for the selection of grand and petit jurors in Oklahoma Territory, does state that, after the names of the jurors have been selected, the clerk shall record said list upon the journal of the court and certify to the correctness thereof. And the statute further provides that, as soon as said list is completed and recorded, the clerk of the district court shall forthwith write each name upon separate pieces of paper and place them in a box, etc. If these acts required the exercise of judicial powers, then they could not have been performed by the deputy clerk in the absence of a statute giving the deputy this power. But it appears upon their face that these were purely ministerial acts, and it was therefore within the power of the deputy clerk to perform them; and his action is just as regular and binding as if it had been performed by his principal. 7 Cyc. p. 248, is as follows:

"In the absence of any statutory provision or implication to the contrary, a deputy clerk is authorized to perform any official ministerial act that may be done by his principal, except to make a deputy. Thus it has been held that a deputy clerk may administer oaths, take affidavits and acknowledgements, take claims of witnesses for attendance, approve bonds, make certificates, issue and test writs, draw the names of grand jurors, and order the seizure of personalty in an action of claim and delivery."

The defendant filed an application to take evidence in support of his motion to set aside the indictment. This application was based on section 5399, Wilson's Rev. &Ann. St. 1903, which is, in part, as follows:

"To enable the defendant to make proof of the matter set up as grounds for setting aside the indictment, the defendant may file his application before any court of record in the county,

setting out and alleging that he is indicted in the district court, naming it, and setting out a copy of his motion to set aside the indictment, and alleging all under oath, that he is acting in good faith, and praying for an order to examine witnesses in support thereof."

It will be observed that the statute in express terms states that this application must allege "all under oath." The affidavit in this case fails to comply with this statute, because it does not allege that the facts stated in the application are true. It was therefore not sufficient to authorize the court to make an order to take evidence in support of the motion to set aside the indictment. Two things must concur before a court would be authorized to make the order prayed for: First. The facts alleged in the application must be sufficient, if true, to set aside the indictment which we have held was not true of the application in this case. Second. The affidavit must state that the allegations made in the application are true. This was not done in the affidavit. For these reasons there was no error in the action of the court in overruling the motion and refusing to take evidence.

Third. Defendant complains that the trial court erred in overruling his application for a continuance. The first ground relied upon was that there was then pending in the probate court of Payne county an information against the defendant for the same offense, and that defendant had an agreement with the county attorney that the case so pending in the probate court should be continued to await the result of some other case pending on appeal in the Supreme Court of the territory. It is almost universally recognized that a grand jury can find a valid indictment against a defendant, notwithstanding the fact that another indictment or information is pending against the accused for the same offense, and the pendency of the other indictment or information, when there has been no jeopardy on it, cannot be pleaded either in abatement or in bar of the second indictment. The indictment having been legally returned into court, it was the duty of the court to dispose of it, just as if the information was not pending.

The second ground relied upon for the continuance was the absence of R. B. Bryan, who was alleged to be a material witness for the defendant, and who was at that time in the territory of New Mexico. There are two objections to the motion for a continuance: First. It does not allege that the defendant could not prove, by other witnesses, the same facts desired to be proven by the absent witness. In the case of *Murphy et al. v. Hood & Lumley*, 12 Okla. 595, 73 Pac. 261, the Supreme Court of Oklahoma Territory held that this omission was fatal to an application for a continuance. While we concur in this view as a general proposition, yet we do not desire to be understood as holding that it should be enforced in all cases. It might occur that cases may arise in which the testimony of an absent witness might be intrinsically more valuable than that of any other witnesses available. When such contingency arises, the application for a continuance should state the facts fully which would take the case out of the general rule. Secondly. The application for a continuance, omitting the question of diligence, stated that:

"That affiant believes said witness will prove the following facts, to-wit: 'That the said R. B. Bryan, on the 12th day of May, 1906, was a resident of the town of Glencoe, Payne county, territory of Oklahoma, and the owner and proprietor of a drug store in said town, and that Bryan Reed worked for him as a clerk in said drug store; that said R. B. Bryan was then giving his personal attention to said business, and was in his said store' as usual on the 12th day of May, 1906, and that his said clerk, Bryan Reed, was present in the store on that day; that he is well acquainted with James Hoggatt, and that said person did not purchase or obtain any whiskey or any spirituous or intoxicating liquor on said 12th day of May, 1906, or at any other time, from any one in said drug store or from Bryan Reed; that said R. B. Bryan and Bryan Reed were both present in the store at work together throughout the said 12th day of May, 1906, as upon other days, and that said R. B. Bryan would have seen said James Hoggatt if he had obtained or purchased any whisky or other intoxicating liquor from said Bryan Reed on said day or at any other time."

It is seen that the evidence of the absent witness, as set out in the application for the continuance, consisted so far as this

case is concerned, in statements of negative conclusions of fact, and that it shows upon its face that if this defendant was not guilty of the offense charged there was better evidence of this than that on account of which the continuance was sought. No attempt was made to procure the testimony of James Hoggan, and a continuance on account of his absence was not sought. There was, therefore, no error in the action of the court in over-ruling the application for a continuance.

Fourth. It appears from the record, that upon the trial of this cause a government witness produced a bottle which he testified contained whisky, and identified it as being the bottle of whiskey that he had purchased from defendant. This bottle was introduced in evidence, and the jury were permitted to look at and smell the contents of the bottle. To all of which the defendant duly objected and excepted. Counsel in their brief say "the evidence must either be oral or written, and the jury cannot act as witnesses as well as triers of facts." It is true that counsel cite cases from the Supreme Courts of Kansas and Alabama in support of their position, but we cannot agree with their contentions. Both upon reason and authority we submit that there are three channels through which tribunals of fact receive evidence, namely, inspection, documents, and oral testimony. No jury ever decided any controverted question of fact without using one or more of their five senses. The senses of hearing and sight are used in every case for more purposes than that of simply seeing the witnesses and hearing their words. Through these senses impressions are made upon the minds of the jurors which cause them to accept as true, or reject as false the statements made by the several witnesses. Thus the exercise of these senses, on the part of the jurors, affects their verdicts. But this does not make them witnesses in the case. They have simply tested the credibility of the witnesses by the personal experience and observations of the jurors. A thousand things in the lives and observations of the jurors may influence them in doing this, but a knowledge of these things has never been regarded as making the jurors witnesses in the case. In this case the jurors were permitted to

smell the contents of the bottle offered in evidence, to enable them to decide as to whether the prosecuting witness had told the truth about its being whiskey. By this the jurors did not learn any facts independent of the evidence; they simply tested the facts in evidence by the use of one of their senses. Or, in other words, they were permitted to hold an autopsy on part of the evidence already before them, to test its true character.

Our statute permitting the inspection of places and premises, referred to in the evidence, when, in the opinion of the court, such inspection will promote the ends of justice, clearly recognizes the right of a jury to receive evidence by inspection  If this is true with reference to places and premises, which cannot be incorporated in the record or introduced in evidence before the jury in the court room, why should it not be true as to any other object or thing which is introduced in evidence before the jury, under the direction of the trial court? If the jury can exercise the power of inspection through the sense of sight, why should they not exercise the power of inspection through any or all of their other senses? We hold that they have this power as to all objects and things introduced in evidence before them, subject to the discretion and control of the trial court, a proper understanding of which depends upon the common experience of men. In a matter requiring expert knowledge this would not be true.

We are fully sustained in these views by the following authorities:

After discussing the subject of inspection by the jury, or autoptic evidence, at length, Mr. Wigmore, in the second volume of his work on Evidence, in section 1152, says:

"In short, it does not appear that there is, in the nature of the process, any distinction to be taken as regards the kind of fact presented for inspection. Anything cognizable by the senses of the tribunal may thus be offered."

17 Cyc. p. 290, is as follows:

"The tribunal of fact receives evidence through three channels—inspection, documents, and witnesses. Evidence gained by inspection covers facts which the tribunal cognizes with its own

senses; sees, hears, smells, tastes, or otherwise perceives for itself."

This question of the right of a party to introduce autoptic evidence, which is the same thing as inspection by the jury, came up in the case of *Gentry v. McGinnis*, 3 Dana (Ky.) 382, 386. This case involved the question as to whether the plaintiff was a white or negro woman. Chief Justice Robertson said:

"The counsel denies that personal inspection by the jurors on the trial is proper or allowable evidence * * * To a rational man of perfect organization the best and highest proof of which any fact is susceptible is the evidence of his own senses. This is the ultimate test of truth, and is therefore the first principle in the philosophy of evidence. * * * Hence autopsy, or the evidence of one's own senses, furnishes the strongest probability, and indeed the only perfect and indubitable certainty of the existence of any sensible fact. * * * (Jurors), when they decide altogether on the testimony of others, do so only because the fact to be tried is unsusceptible of any better proof. Their own personal knowledge of the fact would always be much more satisfactory to themselves, and afford much more certainty of truth and justice. * * * Hence the policy of having a jury in the vicinage; and hence, too, jurors have not only been permitted, but required, to decide on autoptical examination wherever it was practical and convenient."

Wharton on Criminal Evidence (9th Ed.) § 312, is as follows:

"The remains of a deceased person may be produced, when in a fit condition, for the purpose of showing the nature of an injury. So all instruments by which an offense is alleged to have been committed; all clothes of parties concerned, from which inference may be drawn; all materials in any way part of the *res gestae* may be produced at the trial of the case. Injury to the person may also be proved by inspection. Thus in an action to recover damages for an injury to a limb, the injured limb may be exhibited on trial, to be inspected by the court and jury while the surgeon who was employed to set it testifies as to the injury. When the issue is infancy, on an indictment, the court and jury may decide by inspection, and so when the question arises as to the color of a person. On an issue of bastardy, the jury may judge of likenesses by inspection; and so on an issue

of adultery, for the purpose of connecting a child with a putative father."

In *Commonwealth v. Stevens,* 142 Mass. 457, 8 N. E. 344, the court said:

"The small bottle of whiskey produced by the witness Pease was properly admitted in evidence; it being identified as the whiskey which he bought of the defendant."

In *State v. McCafferty,* 63 Me. 224, Justice Dickerson, in rendering the unanimous opinion of the court, said:

"The leave granted to the jury by the court to take to their room a bottle of the liquor introduced in evidence, not as the liquor seized, but as liquor manufactured and sold by the same person under the same name as the liquor seized, was unobjectionable, coupled with the instruction to the jury not to consider the qualities of such liquor unless they should find from the evidence in the case that it was the same kind as that seized."

We think that the court went too far in permitting the jury to take to their room the bottle of liquor introduced in evidence, on account of the danger of abuse of the privilege. In the absence of a statute to the contrary, the jury should not be permitted to have any kind of beer or intoxicating liquor in their room.

In the case of *People v. Kinney,* 124 Mich. 486, 83 N. W. 147, the Supreme Court of Michigan held that:

"After Mahoney had given his testimony, the prosecution offered the bottle of cider in evidence. Counsel for respondent objected to this offer on the ground that it was incompetent irrelevant, and immaterial. The court said: 'Unless the evidence in this case shows that the contents of this bottle is in the same condition it was on October 5th, it would be of no value as evidence; but, if the evidence has any tendency to show it in the same condition, it would be admissible.' It was received in evidence, and the court then said: 'There is a tumbler, gentlemen, if you want to taste of it—any of you.' Respondent's counsel objected to these remarks of the court instructing the jury that they might taste it. The argument of respondent's counsel here is that if the jury, by tasting it, smelling or drinking it, as they were ordered by the court, thereby acquired knowledge or formed opinions of its properties, as to whether it was hard or fermented cider, those

tasting or smelling it could not give evidence to their fellow jurors without being sworn. There is nothing in the record showing or tending to show that any of the jurors smelled or drank of it, nor is there any evidence that the bottle was placed in their hands for examination. The record is entirely silent upon that subject; but, even if it had been handed them and they had tasted it, we think it would not have been error."

In *Schulenberg v. State,* 112 N. W. 304, the Supreme Court of Nebraska said:

"The authorities are somewhat in conflict as to the propriety of permitting jurors to taste of liquor in prosecutions of this character, and the question has never before been in this court for determination. The Appellate Court of Kansas in *State v. Lindgrove,* 1 Kan. App. 51, 41 Pac. 689, held that it was error to permit jurors to taste of liquor produced in evidence. The reasoning seems to be that the jurors thus obtained private grounds of the belief, and that, after tasting of the liquor, they were properly witnesses in the case and disqualified as jurors. We are unable to concur in that reasoning. If a belief founded on the evidence during the progress of a trial can be held to be a private ground of information, then it may be so held because of a belief founded on any class of evidence. In *Commonwealth v. Brelsford,* 161 Mass. 61, 36 N. E. 677, it is said: 'There are grave reasons against giving liquor to a jury to drink for the purpose of determining whether or not it is intoxicating.' We entirely agree with the sentiment there expressed, where such course is taken by direction of the court, express or implied. The tasting should not be compulsory."

In the case of *Weinandt v. State,* (Neb.) 113 N. W. 1041, it is held that:

"While the court would have no authority to direct or compel the jury to taste or sample liquors, it was not error to permit them to taste thereof if they so chose."

When the trial court is of the opinion that the ends of justice will be advanced by permitting the jury to examine or inspect anything that has been introduced in evidence, the court may permit this to be done, but the examination or inspection must be in open court, and in the presence of the defendant, and at all times subject to the control of the court. Our statute, permitting an inspection by the jury of places or premises, when in the judgment of the court the ends of justice will be promoted

thereby, is simply an extension of the power of inspection to places and premises which cannot be brought into court. Thus we see that our statute recognizes, indorses, and extends the power of inspection. There was no abuse of the power of the trial court in permitting the jury in this case to smell the contents of the bottle introduced in evidence.

Fifth. Defendant complains that the venue was not proven in this case. The indictment laid the venue in Payne county, territory of Oklahoma. The witness Pennington testified that the whiskey was purchased from the defendant in Glencoe, Okla., and that defendant was a clerk in the drug store of R. B. Bryan, which drug store was in Glencoe, Okla. C. E. Donart testified that he was deputy clerk of Payne county, and that the record did not show that R. B. Bryan had a license to retail malt, spirit- uous, or vinous liquors in Glencoe, Okla., on the 12th day of May, 1906. The courts of this state take judicial notice of the bound- aries of the state and of counties in the state, and also of the geographical position and location of cities and towns within their jurisdiction. *Harvey v. Territory*, 11 Okla., 163, 65 Pac. 837. Under this rule the evidence in the case was sufficient to support the venue of the case.

Sixth. The defendant complains that there was no sufficient evidence that R. B. Bryan did not have a license to retail malt, spirituous, and vinous liquors. The deputy county clerk testi- fied that the records of his office did not show that any such license had been granted to R. B. Bryan. We are at a loss to know how any better proof of a want of license to retail liquors could be made than was made in this case. Black on Intoxicating Liquors cites and discusses all of the authorities, and then, on page 507, sums up as follows: ·

"The rule established by the vast preponderance of authority is that, in cases where a license to sell, if produced and relied on, would constitute a complete defense to the action, the prosecution is not bound to produce any evidence in support of the negative allegation that the sale was made without license, but, on the con- trary, the defendant must assume the burden of proving that

he was licensed. Various reasons have at different 'times been advanced in support of this rule. Thus, Dr. Bishop thinks that a *prima facie* case is made out for the prosecution, without evidence on this point, by the presumption that the defendant belongs to the general mass of people, who are unlicensed, rather than to the exceptional class of license holders, and that, as there was certainly a time when he was not licensed, the presumption of continuance applies, which presumptions the rule requires him · to overcome by proof. But we believe the rule is sufficiently justified by considerations of convenience and reasonableness.· It is 'a general and well-settled principle that: 'Where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any person except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, or the like. Here the party, if licensed, can immediately show it without the least inconvenience, whereas, if proof of the negative were required, the inconvenience would be very great.' Another view advanced by the court in Georgia is that a plea of 'not guilty' to a charge of selling without license amounts to an allegation of sell; ing with license, and the rule applies that he who alleges affirmative must prove it, especially if it is peculiarly within his knowledge."

Finding that no material error was committed on the trial of this case, the judgment is in all things affirmed.

BAKER and DOYLE, JUDGES, concur.