PEOPLE v. ADLER.

1. INTOXICATING LIQUORS—EVIDENCE—BEER—LOCAL-OPTION LAW —STATUTES.

Evidence that respondents, father and son, engaged in the business of bottling beer and soft drinks, kept a place fitted up as a bar, purchased beer from breweries in other counties on the order of their customers and delivered cases of liquor to the persons giving orders, without reference to the names to which the goods were consigned, that they also furnished beer by the glass, which was paid for, and cases and bottles bought by customers on the premises, with proof that liquors

so sold were intoxicating, sustains a conviction for keeping a place of business where intoxicating liquors were sold, stored and furnished in violation of the local-option law. 2 Comp. laws, section 5412 *et seq.*; Act No. 183, Pub. Acts 1899; Act No. 107, Pub. Acts 1909.[1]

2. APPEAL AND ERROR—RECORD—ITALICS.
It is improper practice to italicize clauses and paragraphs of the printed record. Supreme Court Rule 35.

3. SAME—ASSIGNMENTS OF ERROR—GENERAL CHARACTER.
The Supreme Court will not consider a general assignment of error that the "court erred in its whole charge, as there was no testimony in the case to support the charge as given."

4. EVIDENCE — INTOXICATING LIQUORS — INTERNAL REVENUE RE-CEIPT—JOINT RESPONDENTS.
Evidence was competent that one of the respondents charged with violating the local-option law had obtained a receipt of the United States deputy collector of revenue for the payment of the $25 liquor dealer's tax; no objection having been raised at the trial that such proof was inadmissible as to the other respondent.

Exceptions before sentence from Jackson; Parkinson, J. Submitted November 16, 1911. (Docket No. 189.) Decided March 29, 1912.

Fred G. Adler and Garfield A. Adler were convicted of violating the local-option statute. Affirmed.

*Nathan E. Bailey*, Prosecuting Attorney, and *M. Grove Hatch*, Assistant Prosecuting Attorney, for the people.

*Forest C. Badgley* and *Verne W. Badgley*, for respondents.

McALVAY, J. Respondents were prosecuted and convicted upon an information charging a violation of the local-option law then in force in Jackson county, the material portion of which information is as follows:

---

[1] Is proof of sale of "lager beer" sufficient to sustain a conviction for unlawful sale of "intoxicating liquors," in absence of proof that it is intoxicating, see note in 7 L. R. A. (N. S.) 195.

Is proof of sale of "beer" sufficient to sustain a conviction under statutes prohibiting sale of vinous, malt, fermented, or intoxicating liquors, see note in 25 L. R. A. (N. S.) 446.

" That on the first day of September, A. D. 1909, at the city of Jackson, and in the county aforesaid, and on divers days and times between that day and the 27th day of August, 1910, one Fred G. Adler and Gar. A. Adler * * * did in a certain building situated in the city of Jackson, etc., * * * keep a place where malt, brewed, fermented and intoxicating liquors were sold, stored for sale and furnished, * * * contrary," etc.

This information contained three counts. Upon arraignment respondents stood mute, whereupon a plea of not guilty was entered by the court. A motion on their behalf was then made to quash the information, for the reason that it charged respondents with separate and distinct offenses. The people then elected to proceed to trial upon the first count of the information above quoted, striking out the words "malt, brewed and fermented" from the last sentence of such quotation. The trial proceeded upon the information as amended, reading:

" Did in a certain building situated in the city of Jackson and county aforesaid keep a place where intoxicating liquors were sold, stored for sale and furnished, contrary," etc.

This trial was had in the November term of court, 1910, and resulted in a disagreement of the jury. In January, 1911, the case was brought on for a retrial by the present prosecutor, who had assumed the duties of the office on the first of that month. From the conviction obtained on that trial respondents ask a reversal upon exceptions before sentence. The fact that the local-option law was then in force in Jackson county is not in dispute.

The assignments of error relied upon and discussed by respondents are to certain portions of the charge of the court, and upon the admission of certain evidence, and the refusal to strike out testimony of a certain witness. Before proceeding to discuss the questions raised by the errors assigned, a statement of certain material facts will be necessary to a proper understanding of the case.

Respondents are father and son. The father, Fred G. Adler, had, for many years before local option was adopted

in Jackson county, been engaged at No. 117 East Pearl street, in the city of Jackson, in carrying on the business of bottling beer, soda, and mineral waters and soft drinks, and, in connection with the bottling business, sold barroom and bottlers' supplies. This is the place which, it is claimed by the prosecution, was kept by the respondents "where intoxicating liquors were sold, stored for sale, and furnished." Since local option was adopted Mr. Adler, Sr., has had the agency of "Peter Hand Beer" for five counties. The testimony shows that "this is a temperance beer." After September 1, 1909, he has also been engaged at this place in taking orders to Koppitz-Melchers Brewing Company and the Voigt Brewing Company of Detroit for lager and other beer manufactured by them, and, it is claimed by respondents, for no other brewers. These order blanks were furnished by the elder Adler and signed by the individual desiring beer, and, with the price in cash and enough to pay the freight from Detroit, were handed to Mr. Adler, who sent them, less freight money, forward to be filled, and, when received at Detroit, were filled by the consignor (brewer) and shipped to Jackson, each case or package marked to the consignee. The money paid for freight was put into a receptacle to be paid later to the transportation companies. A sample of one of these orders does not appear in the record.

The connection of the respondent Gar. A. Adler, as he contends, was that of an expressman. He says that, for the purpose of complying strictly with the law, he procured and had printed a certain blank prepared by a Mr. Hart, prosecuting attorney of Lenawee county. Respondent testified:

"He had studied the local-option question very thoroughly, and that was one of the points he brought out. It was also in conformity with the United States Penal Code, and that was the reason why I was acting to obey the law in Jackson county, so I had the blank printed."

The following is a copy of this delivery order blank in actual use by this respondent:

"Consignee's standing order for delivery of intoxicating liquors.

"JACKSON, MICH., ———, 190-.

"On ——— Agent or Company.

"You are hereby notified that Gar. A. Adler is our regular and exclusively employed agent and authorized to take, deliver and receipt for all consignments of intoxicating liquors consigned to the undersigned and shipped under the provisions of Section 238 of the U. S. Penal Code of January 1, 1910.

"R. H. BAYLESS,
"Signature of Consignee."

These orders are given by the persons ordering beer through Mr. Adler, Sr., for the delivery of the beer so ordered. When a shipment of beer was made from Detroit, respondent testified:

"I get a notification sheet from the brewery with a list and go to the interurban station and check up the list with the man in charge, to know that the beer is there. If the beer is there, he delivers me the beer. * * * This is part of the business method of the brewery. * * * I have filed these orders for delivery of beer with the railroad companies."

Relative to beer for which he had no delivery orders he testified:

"Some of the people who have given the orders come down to my father's place and get their beer. I transfer it from the place where it is unloaded over to my father's place, and leave it there for them. It is left out on the sidewalk. At night, if they have not been there after it, it is taken inside. My father has never objected to, or never consented to, this. He knew about it."

This respondent states that his father for taking orders received no compensation whatever. He says:

"I do not know that he does that for fun. It is a matter of retaining trade which he has worked 30 years to secure. I think that is reason enough."

He states that he gets nothing for delivering the beer, but is paid by the brewing companies 20 cents for each case of empties he returns. As to the payment of the freight on orders, he first says:

"When a purchaser orders the beer, he leaves the money to pay the freight. * * * It is left at my father's place. The freight office sends a man to come and get it. * * * I never paid any freight myself."

Then he testifies:

"The entire amount that pays for freight is left for me. It is left at the place. There was a receptacle there in the place for the purpose of leaving their money. It is in the office. I go there after it. Freight on a case of beer would be 25 cents."

He said that occasionally he had orders for beer handed to him with the money, which he would hand over to his father as an accommodation to the purchaser. As to delivering the beer to the consignees, he testifies:

"I do not take any particular case that is shipped to the particular man and deliver that to him. I start and take the first I come to. I take it just as it comes. I pay no attention to the names on the cases. * * * It is immaterial to me so long as a man gets a case. That is all he cares about. It is nothing to me."

Respondents' testimony has been freely quoted so as to show fairly their claim as to how this business was conducted and the relations of the respective respondents to it.

On the part of the people there is evidence tending to show that beer by the glass was sold and paid for at this place; also, that beer was kept there in cases and sold there and paid for, and the bottles put into suit cases and carried away; that beer in cases was sold and paid for at the place and delivered elsewhere; also, that the beer sold and drank there was intoxicating. A witness testified:

"I bought drink in there of an intoxicating nature. I think the first was on the 19th of November. I got lager beer. Mr. Adler and the bartender were there, I mean the old gentleman. At that time I paid for six or seven beers. The beer man served it. I since learned that it was Mr. Adler's son. The room was fixed up as an ordinary barroom."

This testimony of the prosecution as to the sales of beer

made there at this place and kept there as charged was denied by respondents' witnesses.

Respondents' principal contention is that the court was in error in refusing to give their fourteenth and fifteenth requests to charge. The substance of these requests was that the people must prove, among other things, that the liquor in question claimed to have been sold, stored for sale, and furnished at this place was intoxicating liquor. The statute under which this prosecution was brought provides:

"It shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employé, to manufacture, sell, keep for sale, give away or furnish, any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage; any part of which is intoxicating, or keep a saloon or any other place, where any such liquors are manufactured, sold, stored for sale, given away or furnished." [Act No. 207, Pub. Acts 1889.]

There is no claim made that the information upon which respondents were convicted did not charge an offense under this statute. An excellent brief in support of the contention that the court should have charged as requested is presented. All available authorities are cited and digested. It is apparent that upon the question the authorities are not in harmony. This court has already passed upon the question, holding that the weight of the authorities is against the respondents' contention. *People* v. *Anderson*, 159 Mich. 185 (123 N. W. 605, 25 L. R. A. [N. S.] 446). To the same effect was the decision in an earlier case. *People* v. *Boos*, 155 Mich. 407 (120 N. W. 11). In the instant case there was direct evidence that the lager beer claimed to have been purchased and furnished at this place was intoxicating.

Before proceeding further to discuss the errors assigned upon the charge of the court, we desire to call the attention of counsel for respondents to the fact that on preparing and furnishing this record they have, perhaps un-

intentionally, taken unwarranted liberties with the text of the charge by italicizing certain clauses and paragraphs. During the present term of this court it has been necessary several times to call attention to and criticise such conduct. It is not warranted by the rule, and its purpose is to emphasize certain portions of the record in the interest of one of the parties. By briefs and arguments of counsel, the court's attention may be called to such portions of the record as are claimed to show that error has been committed.

The next error assigned which is discussed reads:

"The court erred in his whole charge, as there was no testimony in the case to support the charge as given."

This court has frequently held that such an assignment is too general, and will not be considered. *Snyder* v. *Patton & Gibson Co.*, 143 Mich. 350 (106 N. W. 1106).

A receipt to F. G. Adler for $25 as retail liquor dealer at this street and number, given by the United States deputy collector of revenue, covering part of the period of time during which the offense was charged, was offered and received in evidence, to which an exception was taken and error assigned. In the discussion of this assignment of error, the brief of counsel for the respondents contains the following:

"We admit that the proof in question might be some evidence tending to show that the respondent Fred G. Adler was engaged in keeping a place for the sale of intoxicating liquors. It would not be evidence against the respondent Gar. A. Adler, and it was improperly admitted as against him."

The record shows that no such objection was made at the time the paper was allowed in evidence. The objection was:

"We object to it as immaterial, having no bearing on the case."

No discussion is necessary. The trial court at considerable length in his charge submitted the case to the jury,

and in the entire charge we do not find any error in his statement of the law. While it does appear that both court and counsel overlooked the fact that the information had been amended, yet there is nothing prejudicial or contradictory in the charge applied to a case where an information had been amended, as this was, confining the offense to intoxicating liquors, and nothing in it whereby the jury could have been misled. The portion of the charge relative to the weight which the jury might give to the testimony of hired detectives was not erroneous, but correctly stated the law.

The complaint is made that the evidence did not warrant a joint conviction of respondents or a conviction of either. The court with care guarded the rights of respondents in this respect, and the verdict is supported by abundant evidence. It is apparent from reading this record that this whole business was a subterfuge carried on by these parties supposedly in a way to avoid any criminal liability on the part of either. The evidence shows that both were engaged in the enterprise, and each had knowledge of the part the other performed.

The jury has found that defendants were guilty. It is apparent that in arriving at such conclusion they were justified by the proofs covering the entire scheme, from the giving of the orders and paying for beer, to the reckless delivery of the goods when notification came to one of them when shipment was made. We find no reversible error in the case. The conviction is affirmed, and the court below will in due form proceed to judgment.

STEERE, BLAIR, and STONE, JJ., concurred with MC-ALVAY, J.

OSTRANDER, J. (*concurring*). The information referred to intoxicating liquor only. It would not have supported a conviction for keeping a place where fermented liquors were kept or sold without proof that the liquor was intoxicating. *People* v. *Hickman*, 164 Mich. 672 (130 N. W. 331).

This court has not held that a charge of selling or keeping for sale intoxicating liquor is sustained by proof that beer or cider was sold or kept for sale without further proof that the liquor was intoxicating.   In *People* v. *Anderson*, 159 Mich. 185 (123 N. W. 605, 25 L. R. A. [N. S.] 446), the testimony was that beer was sold, and the contention answered by this court was that "beer" did not necessarily import "any of the qualities of the prohibited liquor." The information charged the furnishing of malt, brewed, fermented, spirituous, and intoxicaing liquor.

In *People* v. *Boos*, 155 Mich. 407 (120 N. W. 11), the charge was of selling spirituous, malt, brewed, and fermented liquor, and the proof was that respondent sold lager beer.   It does not appear that the point was made that lager beer was not either one or other of the liquors described in the information.   The point was that the prosecution had not shown that the business of selling liquor was carried on.

The charge that one keeps for sale or sells fermented liquor is not required to be supported by proof that the liquor is intoxicating, and proof that it is not intoxicating is not a defense.   *People* v. *Kinney*, 124 Mich. 486 (83 N. W. 147).   The court should therefore have charged the jury, as requested to do, that the people were required to prove that the liquor claimed to have been sold, stored for sale, and furnished was intoxicating liquor.   But the failure to so instruct the jury was not prejudicial error.   The consignee orders upon which respondents rely in part for protection are standing orders for delivery of intoxicating liquors.   It seems that a federal tax was paid, and there is also the positive testimony of a witness that he bought and drank at the place lager beer which was of an intoxicating nature.   Respondents admittedly handled the beers of well-advertised and well known breweries in the State.

I agree in the conclusion stated in the opinion of Mr. Justice MCALVAY.