## GALLAGHAN v. UNITED STATES.

## COLWELL v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

Nos. 6391, 6392.

1. **Criminal law ⊕619—Informations charging different defendants cannot be consolidated.**

Two or more indictments or informations, in which some of the defendants charged are different, cannot be consolidated, under Rev. St. § 1024 (Comp. St. § 1690).

2. **Jury ⊕136(6)—Trial of indictments together does not affect right of defendants in each to peremptory challenges.**

That indictments or informations which could not be consolidated are tried together by consent does not deprive the defendants in each indictment or information of the right to the number of peremptory challenges to which they would be entitled under Judicial Code, § 287 (Comp. St. § 1264), if tried separately.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Witnesses** &⟹266—**Cross-examination of witness for prosecution is defendant's absolute right.**

   Where a witness has testified for the prosecution, his fair and full cross-examination on the subjects of his examination in chief is an absolute right of the defendant, and a denial of that right is prejudicial error.

4. **Criminal law** &⟹459, 489, 741 (4)—**Testimony of witness that liquid he drank was whiskey is competent, but not conclusive, weight being for jury.**

   Testimony of a witness, who is familiar with the taste and smell of alcoholic liquors, that a liquid he drank was whisky, is competent, but its weight is for the jury, and the right to cross-examine him may not be denied.

5. **Criminal law** &⟹489—**Denial of right of cross-examination held error.**

   Where witness for prosecution testified that he made a test of a liquid, with a hydrometer and that it contained a certain percentage of alcohol, denial of the right to show by his cross-examination that other liquids besides alcohol would give the same result, when given a gravity test, was error.

6. **Criminal law** &⟹861—**Permitting jury to smell or taste liquor in evidence not proper practice.**

   In prosecutions for violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), permitting the jury to smell or taste a liquid offered in evidence *held* not proper practice.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Criminal prosecutions by the United States against Tim Gallaghan and against S. L. Colwell, also known as Cy Colwell. Judgments of conviction, and defendants bring error. Reversed and remanded.

E. D. O'Sullivan, of Omaha, Neb. (W. N. Jamieson and C. J. Southard, both of Omaha, Neb., on the brief), for plaintiffs in error.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (J. C. Kinsler, U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

LEWIS, Circuit Judge. In July, 1922, three criminal informations were filed in the office of the clerk of the District Court at Omaha, all charging violations of the National Prohibition Act (41 Stat. 305 [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]). The first was put on the docket as No. 2227. It contains three counts, the first count charges that George W. Colwell, S. L. Colwell, and J. H. Jackson did on June 19, 1922, unlawfully sell certain intoxicating liquor, to wit, 1 quart bottle of beer and ½ pint of whiskey; the second count charges that George W. Colwell, S. L. Colwell, and J. H. Jackson did on June 20, 1922, unlawfully sell intoxicating liquor, to wit, ½ pint of whiskey; and the third count charges that George C. Colwell, S. L. Colwell, and J. H. Jackson did on June 21, 1922, have in their possession certain intoxicating liquor, to wit, 130 pints of home brew beer, 12 quarts of home brew beer, 1 gallon bottle of whiskey and 1 gallon bottle of whiskey, half full. This information is supported by the affidavits of H. J. Hansen and B. F. Lynch. Hansen averred that on June 19, 1922, accompanied by W. R. Sweet he went into the soft drink parlor of

&⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

G. W. Colwell at No. 311 North Sixteenth street, Omaha, Nebraska, where he purchased one quart of beer for 50 cents, which he and Sweet drank on the premises; that he also bought one-half pint of what was claimed to be Spring Hill whiskey; that on June 20, accompanied by Sweet he again visited that place and purchased one-half pint of supposed Spring Hill whiskey. Lynch in his affidavit said that a search warrant issued on June 21, 1922, to search the premises named and that the search resulted in the seizure of the beer and whiskey named in the third count.

The second information was put on the docket as No. 2238. It contains one count, which charges that Cy Colwell, G. W. Colwell, and Tim Gallaghan did on June 21, 1922, unlawfully sell certain intoxicating liquor, to wit, 3 drinks of intoxicating liquor, to wit, whiskey    This information is supported by the affidavit of Maurice Silverman and Lane Moloney, who say that on June 21, 1922, they purchased from the bartender at the premises known as 311 North 16th street, Omaha, 3 drinks of intoxicating liquor, to wit, whiskey.

The third information was put on the docket as No. 2248. It contains two counts, the first count charges that Cy Colwell, George W. Colwell, John Shea and Randolph Stevens did on May 3, 1922, unlawfully sell certain intoxicating liquor, to wit, 2 drinks and ½ pint of whiskey, and the second count charges that Cy Colwell, George W. Colwell, John Shea and Randolph Stevens did on April 28, 1922, unlawfully sell certain intoxicating liquor, to wit, 4 drinks and ½ pint of whiskey. This information is supported by the affidavit of George W. King, who says that on the 28th day of April, 1922, he purchased at the soft drink parlor of Cy Colwell and George W. Colwell, at 311 North Sixteenth street, in the city of Omaha, Nebraska, four drinks of whiskey and one-half pine bottle of whiskey, and on the 3d day of May, 1922, he purchased at the same place two drinks of whiskey and one-half pint bottle of whiskey.

S. L. Colwell and Cy Colwell are one and the same person. He was convicted on the third count of the first information, on the one count of the second information, and on both counts of the third information. Gallaghan was convicted of the charge in the second information. They sued out these writs of error.

All of the defendants named in the three informations, except Shea (not in custody), pleaded not guilty and went to trial at the same time before the same jury without objection; but during the impaneling of the jury and after the defendants had made three peremptory challenges the court, over their objection, refused to allow them any more peremptory challenges.

[1, 2] The information in No. 2227 charged Jackson and the two Colwells, in No. 2238 it charged Gallaghan and the two Colwells, and in No. 2248 it charged Shea and Stevens and the two Colwells. The six offenses as charged in the three informations could not have been joined in separate counts in one information. Therefore, there could be no consolidation under section 1024, R. S. (section 1690, Comp. St.). McElroy v U. S., 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355. There were parties defendant in each information, put upon trial, who were

not defendants in either of the other two informations. The right of challenge is an essential part of a jury trial. Lewis v. U. S., 146 U. S. 370, 376, 13 Sup. Ct. 136, 36 L. Ed. 1011. It is regulated by Act of Congress. Judicial Code, § 287 (Comp. St. § 1264). While the three informations could not be consolidated under the terms of the statute, the prosecution and the defendants in the several informations could consent to one trial by the same jury; but that gave the court no right to deny them their peremptory challenges, three on each of the three separate informations. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706; Betts v. U. S., 132 Fed. 228, 65 C. C. A. 452; Butler v. Evening Post Pub. Co., 148 Fed. 821, 78 C. C. A. 511. The ruling denied them a right guaranteed by the law and was clearly prejudicial error.

[3] It is also assigned as error that the court denied counsel for plaintiffs in error the right to cross-examine some of the witnesses for the prosecution. Lane Moloney was called as a witness to sustain the charge in information No. 2238, against the two Colwells and Gallaghan, of which they were convicted. He testified in chief that on June 21, 1922, he went with Silverman, another witness, to 311 North Sixteenth street, Omaha, that Silverman purchased from Gallaghan two drinks of liquor and that he and Silverman drank it, that he was not positive or able to say whether it was colored alcohol cut and flavored with bourbon or whether it was straight whiskey, but he thought it was whiskey and took it for straight whiskey at the time. On cross-examination this occurred:

"Q. Are you particularly skilled in the taste and smell and appearance of whiskey,

"The Court: Well, I hold that a man don't have to be. We all know enough about whiskey to know whether it is an alcohol drink or not. You cannot fool a grown man on that.

"Mr. O'Sullivan: The defendants take exception to the remarks of the court.

"The Court: Well, let's get along.

"Mr. O'Sullivan: Do I understand that I am precluded from this line of inquiry, Your Honor?

"The Court: I don't know. Anything that is pertinent to the inquiry here of course may be asked, but I won't spend any time fooling with a man who has had a couple of drinks of hard liquors having to tell about the details of what it smells like, or looks like, or tastes like."

Maurice Silverman was next called as a witness. He testified that he went to 311 North Sixteenth street on June 21, 1922, with Moloney. He was there, however, a short time before that alone, and testified that he bought a drink of whiskey from Gallaghan, that he later went back with Moloney and he purchased two drinks for himself and Moloney and they drank it, that his business for two and a half years past had brought him in contact with the taste, color and smell of whiskey and in his opinion what he bought and drank was whiskey. During the cross-examination of Silverman this occurred:

"Q. Now, did you ever taste or see any concoction that looked and smelled and tasted like liquor but yet was not liquor?

"The Court: Oh, I don't think we will pursue that line of inquiry I think it is just as simple a proposition of whether it is a drink of whiskey, as it

is of whether it is a pair of pants, just about as simple a question, one as the other."

B. F. Lynch, Federal Prohibition Agent, was called for the prosecution. He had been stock keeper and gauger at Willow Springs Distillery for twelve years, and testified that he had gauged Government Exhibits 1 and 2 to determine alcoholic content, that Exhibit 1 was 37.91 per cent. alcohol and Exhibit 2, 36.42 per cent. alcohol, and that they came from 311 North Sixteenth street, that the test he made was what is known as a gravity test. He did not make a chemical test. He described how the gravity test was made. This occurred on cross-examination:

"Q. Mr. Lynch, there are a number of combinations of liquids that have the same specific gravity?

"The Court: Oh, well; that is immaterial. It is immaterial; of course there are. It is immaterial.

"Mr. O'Sullivan: I would like to pursue this inquiry further, Your Honor.

"The Court: No, I think the inquiry has gone far enough.

"Q. You made a test with what do you call it, a hydrometer?

"A. A hydrometer, yes.

"The Court: A hydrometer test is all the test he made and in addition we are all taking a smell of it and those who want to are taking a drink of it. We will determine whether it is whiskey or not.

"Mr. O'Sullivan: Defendants and each of them offer to prove, and wish to elicit from the witness on cross-examination, that the gravity test is not a satisfactory test to determine alcoholic content; that in order to make a gravity test you must first assume that it is alcohol, and without this assumption that the liquid in question is alcohol the test is worthless; that the only accurate test to determine alcoholic content is a chemical test because of the fact that there are many combinations of liquid that have the same specific gravity.

"The Court: Overruled."

To the rulings of the court made during the cross-examination of all three of these witnesses the plaintiffs in error objected and excepted. The action of the court in denying counsel the right to cross-examine was a clear denial of defendants' legal rights. The testimony of each of them on which cross-examination was sought went directly in support of some of the criminal charges. Chamberlayne's Handbook on Evidence, §§ 171, 172, says:

"The right to test an opponent's case which is conferred on every litigant by substantive law is of an importance to him which makes its denial or unreasonable curtailment contrary to the principle of judicial administration. * * * The right to a reasonable opportunity for cross-examination at an appropriate stage and in relation to matters then open for consideration is undisputed in any quarter."

And at section 1174:

"The right to cross-examine a witness after he has been examined in chief is one which is undisputed, and if, after he has testified on direct examination, no opportunity therefor is afforded, as in case of his death or illness, or where a party to the proceeding refuses to answer, or from some other cause, his testimony will be rejected."

In The Ottawa, 3 Wall. 268, it is said at page 271 (18 L. Ed. 165):

"Cross-examination is the right of the party against whom the witness is called, and the right is a valuable one as a means of separating hearsay from

knowledge, error from truth, opinion from fact, and inference from recollection, * * * and of testing the intelligence, memory, impartiality, truthfulness, and integrity of the witness."

In Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 Fed. 668, 674, 64 C. C. A. 180, 186, this court said:

"But a fair and full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, and not the mere privilege, of the party against whom he is called; and a denial of this right is a prejudicial and fatal error."

[4] There is no doubt about the rule that a witness, who is familiar with the taste and smell of alcoholic liquors, may give his opinion whether a liquid which he has tasted or smelled, or tasted and smelled, is an intoxicating liquor of a certain name. Sabutis v. U. S. (C. C. A.) 270 Fed. 209, 210; Lewinsohn v. U. S. (C. C. A.) 278 Fed. 421, 425; Albert v. U. S. (C. C. A.) 281 Fed. 511, 513; Singer v. U. S. (C. C. A.) 278 Fed. 415; Strada v. U. S. (C. C. A.) 281 Fed. 143, 145; Rose v. U. S. (C. C. A.) 274 Fed. 245. Such opinions are competent evidence. Their weight is left to the jury. And where one calls for whiskey or any other intoxicating liquor, drinks it and pays for it, a presumption ordinarily arises that it is the liquor which he called for. Here Moloney and Silverman both testified that they each called for a "shot." But however direct and positive the testimony of a witness may be, the right of cross-examination may not on that or any other account be denied. It may be limited within reasonable bounds, but here it was not a question of limitation. It was wholly denied on the subject as to which inquiry was being made. The same is true as to witness Lynch.

[5] Defendants' counsel had a right to inquire of the witness as to the reliability and sufficiency of the test which he made and the principle on which it rested. Counsel conceded that if the liquid contained alcohol the hydrometer would register the per cent. thereof. No one who was familiar with the taste and smell of whiskey had testified that he had tasted or smelled the contents of the bottles Exhibits 1 and 2, and that in his opinion they contained whiskey. Those were the bottles of liquid to which Mr. Lynch testified he applied the gravity test. It is common knowledge that alcohol and some other liquids are lighter than water; and the principle of the hydrometer is simply an application of the law of floating bodies, viz. that when a body floats the weight of the bulk of liquid displaced is equivalent to the weight of the body floated. The floating hydrometer registers the relative density or specific gravity of the liquid in which it floats. It is apparent that counsel's contention was not wholly without foundation. The point is given further significance by the affidavit of Mr. O'Brien, attached to the motion of defendants for a new trial. In that affidavit Mr. O'Brien on his oath says, that he is a graduate chemist, has been an instructor in chemistry and is qualified to make chemical analysis of liquid containing alcohol, that a short time before the trial of defendants came on certain Government agents, who he understood and believed were agents King and Silverman, brought two half-pint bottles of liquid to him for the purpose of having a chemical test made of the same, that the bottles were labeled and on the labels it was recited when and from whom

they were purchased, and he distinctly remembered that the labels recited that they were purchased from parties by the name of Colwell, that he made a chemical test of the contents of the two bottles and learned therefrom that said bottles did not contain any liquid which had any alcohol in it, that he so informed said Government agents and they took the bottles away with them. He also said that the mixture contained in said bottles had the appearance of whiskey; the smell of whiskey; and a taste similar to whiskey. George W. King testified that he bought two bottles supposed to contain whiskey at 311 North Sixteenth street. On one occasion witness Silverman was with him, on the other occasion a Mr. Cooper was with him. It is impossible to learn from the record whether those two bottles were Exhibits 1 and 2, whether they were the bottles handed to Mr. O'Brien for analysis, or whether they were neither.

[6] While Mr. Lynch was on the witness stand, and after he had stated on cross-examination that he had made a gravity test of Exhibits 1 and 2 the court said this:

"Well, in order that there may be no mistake about it, pour out a little of that in a glass, Mr. Lynch, and present it to the jury and let them smell it, and those that want to can take a drink of it."

Defendants' counsel objected to the liquid being handed to the jury, on the ground that to do so would in effect make witnesses of the jurors. The objection was overruled, to which exception was taken. The record then recites:

"Whereupon some of the liquid was poured into a glass and the glass with its contents handed to the jury and each juror inspected the same."

There is no further showing as to the kind of inspection made by each juror, whether any or all of them smelled it or tasted it. In view of the well-known fact that much of the intoxicating liquors now illicitly made are fatally poisonous we are not disposed to assume that the jurors took that chance. The rule on the question which counsel raises was not uniform, even before prohibition, when government supervision of distillation and manufacture gave some assurance of alcoholic content and quality. Cases which we have examined holding that such a practice was improper are Wadsworth v. Dunnam, 117 Ala. 661, 23 South. 699; State v. Lindgrove, 1 Kan. App. 51, 41 Pac. 689; State v. Eldred, 8 Kan. App. 625, 56 Pac. 153; State v. Coggins, 10 Kan. App. 455, 62 Pac. 247; Dane v. State, 36 Tex. Cr. R. 84, 35 S. W. 661; Galloway v. State, 42 Tex. Cr. R. 380, 57 S. W. 658; Parker v. State (Tex. Cr. App.) 75 S. W. 30. In Commonwealth v. Brelsford, 161 Mass. 61, 36 N. E. 677, it is said:

"There are grave reasons against giving to a jury liquor to drink for the purpose of determining whether it is or is not intoxicating."

There is less reason for such a practice now than then. Holding to the contrary are State v. Olson, 95 Minn. 104, 103 N. W. 727; People v. Kinney, 124 Mich. 486, 83 N. W. 147; Schulenberg v. State, 79 Neb. 65, 112 N. W. 304, 16 Ann. Cas. 217; Weinandt v. State, 80 Neb. 161, 113 N. W. 1041; Reed v. Territory, 1 Okl. Cr. 481, 98 Pac. 583, 129 Am. St. Rep. 861. Accepting, but neither approving nor disapprov-

ing, the rulings in the cases last cited, as a proper practice at the time and under the conditions prevailing when those cases arose; nevertheless, it is our opinion that when a court comes to deal with the present-day mongrel of nondescript mixtures, that practice ought not to be indulged, because not likely to be helpful but probably prejudicial, and because the practice, as it seems to us, is not in keeping with an orderly and dignified administration of justice.

For the reasons stated convictions of plaintiff in error Colwell, on the three informations and of plaintiff in error Gallaghan, on the one information must be reversed and the cases remanded for a new trial.

It is so ordered.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes