### F. L. O'NEAL v. STATE.

No. A-3383.    Opinion Filed April 15, 1920.

(188 Pac. 1092.)

(Syllabus.)

1.  **INDICTMENT AND INFORMATION—Proof of Venue As Charged.** The venue of an offense must be proved as charged.

2.  **LIBEL AND SLANDER—Evidence—Sufficiency.** For reasons holding the evidence in this case insufficient to support the judgment, see body of opinion.

*Appeal from County Court, Cole County;*

*C. M. Threadgill, Judge.*

F. L. O'Neal was convicted of the crime of slander and he appeals. Judgment reversed.

*Wimbish & Duncan,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the county court of Coal County, wherein the defendant was con-victed of the crime of slander, and his punishment fixed at a fine of $25 and the cost of the prosecution.

The action is based on section 2388, Revised Laws 1910, which provides as follows:

"If any person shall orally or otherwise, falsely and maliciously or falsely and wantonly impute to any fe-male, married or unmarried, a want of chastity, he shall be deemed guilty of slander, and upon conviction shall be fined not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than ninety days, or by both such fine and imprisonment."

The charging part of the information reads as fol-lows:

"That F. L. O'Neal did in Coal county and in the state of Oklahoma, on or about the —— day of June, 1917, and anterior to the presentment hereof, commit the crime of slander in manner and form as follows, to wit: That he did then and there falsely, maliciously, and wan-tonly impute to one Fannie D. Evans a want of chastity, by then and there stating in the presence and hearing of A. L. Green as follows: 'That God damned whole whoring outfit, if they don't stop that, I'll give them a jar that will make the old man turn over in his grave,'—then and there

meaning the said Fannie D. Evans and her family, contrary to the form of the statutes," etc.

The defendant interposed a demurrer to the information, which was overruled and excepted to. A plea of not guilty was then entered, and trial had, resulting in a conviction and the imposition of the punishment set out above.

A. L. Green testified concerning the material allegations of the information to the following effect:

"Q. Mr. Green, did you hear Mr. O'Neal say anything about Mrs. Evans and her family? A. Yes, sir.

"Q. What did he say? A. He said, 'If that damn dirty outfit don't let me alone, I will tell something on her that will make her old man turn over in his grave.'

"Q. Did he say anything else? A. Yes, sir; he went on saying something else to himself.

"Q. Did you understand what he said? A. Well, I understood him to say 'whoring outfit.'

"Q. Did he say this in the presence of anyone else? A. Well, it has been so long I don't quite remember. * * *

"Q. Well, Mr. Green, you say he was talking about both being a whoring outfit, the Davis outfit? A. Yes, sir.

"Q. Davis outfit? A. Yes.

"Q. You just heard him say 'whoring outfit'; you don't know whether he meant Mrs. Evans and her family or not, only that he said that dirty Davis outfit had better let him alone? A. Well, I can't say that he meant Mrs. Evans and her family, but I know he said, 'If that dirty outfit don't let me alone, I will tell something on her that will make her old man turn over in his grave,'

and he was at that time mad at Mrs. Evans because she had this petition out for the post office.

"Q. What Davis was Mr. O'Neal talking about? A. Thadan Davis.

"Q. Mr. Green, where was this at you heard Mr. O'Neal make this remark? A. It was out at Mr. Moore's thresher.

"Q. Did anyone else hear Mr. O'Neal make this remark? A. I don't know; there was others around the thresher.

"Q. There was no one around as you can remember that was close by that could have heard Mr. O'Neal make this remark? A. No, sir; not when he was talking to me, and when he went on murmuring to himself he went over towards the thresher."

Ottis Fanning testified as follows:

"Q. Mr. Fanning, do you know the defendant, Fayette O'Neal? A. Yes, sir.

"Q. Mr. Fanning, in June, 1917, do you remember when you was out to Mr. Moore's thresher, you and Mr. O'Neal and others? A. Yes, sir.

"Q. Did you hear Fayette O'Neal make a remark about Mrs. Fannie D. Evans and her family being a whoring outfit? A. Well, I just can't say as to whether he said 'whoring outfit,' but as well as I can remember he said 'that dirty outfit.'

"Q. Was Mr. O'Neal talking very loud? A. Well, loud enough that I heard him say 'dirty outfit.'

"Q. Did Mr. O'Neal make any specific reference to whom he was talking about? A. Well, he said that dirty Evans and Davis outfit had better let him alone.

"Q. Was there any one else around when Mr. O'Neal made this remark? A. Yes, sir; there was, but I could not say as to whether they heard him make this remark."

The above-named witnesses were the only witnesses for the state who gave any testimony concerning the alleged slanderous remarks made by the defendant regarding Mrs. Fannie D. Evans.

The defendant testified as follows:

"Q. Mr. O'Neal, you have heard the testimony in this case, have you not? A. Yes, sir.

"Q. Mr. O'Neal, what is your occupation? A. Postmaster.

"Q. Where at; I mean in what town? A. In Clarita.

"Q. Coal county? A. Yes, sir.

"Q. Do you know the plaintiff in this case, Mrs. Fannie D. Evans, or Mrs. Davis now? A. Yes, sir.

"Q. Mr. O'Neal, state to the jury what you know in regard to this matter. A. Well, one day I met up with Green, and he said to me, 'Fayette, do you know that there is a petition out against you?' and I said 'Yes.' And Green said he had signed it, but he did not want to, but they insisted that he sign it, so he did. It made me mad at the time, for I felt that he wanted to play on both sides, and I told him I did not care, but I did say that dirty Davis outfit had better let me alone, and I got so mad I walked away, and Tom Ridley walked up and hit me on the back and said, 'Fayette, what in the devil is wrong with you?' and I told him about it. I said, 'Tom Ridley, Tom, if I thought you was half as dirty as that Davis outfit I would not help you out of a mud hole if the ants was eating you up.' And that was all I had to say."

Cross-examination:

"Q. Fayette, did you not say, 'If that dirty whoring outfit of a Evans outfit don't let me alone, I will tell something on her that will make her old man turn over in his grave'? A. No, sir; I did not. You know, John, I told you the first time I was at your office that I did not say it. I told you just what I said.

"Mr. Harley: Never mind, Fayette, what you told me, it is nothing to me what you said; you just answer the questions you are asked.

"Q. Fayette, have you ever seen anything wrong that you could make any remark about Mrs. Evans? A. No. sir, I cannot; just only seen her with Davis, and they would act just like sweethearts do, loving.

"Mr. Wimbish: Q. Mr. O'Neal, you say you don't remember of ever making any kind of a remark about Mrs. Evans as to her family being a whoring outfit? A. No, sir; I never did make any kind of a remark about Mrs. Evans."

At the conclusion of the state's evidence, counsel for the defendant requested the court to instruct a verdict in favor of the defendant for the reason that the evidence was insufficient in law to sustain the conviction. This motion was renewed at the conclusion of the entire evidence, and on both occasions was overruled by the trial court, to which an exception was properly reserved.

It is contended, among other grounds for reversal, that the evidence is wholly insufficient to warrant the conviction; also that there is an entire lack of proof of the venue of the offense to have been in Coal county, Oklahoma.

The Attorney General has filed a confession of error containing, among others, the following statements:

"We believe that the objection here urged pertaining to the sufficiency of the evidence will have to be sustained. The proof introduced by the prosecution is not strong under the most liberal construction in its favor. and the venue of the crime was not shown by any evidence. The venue was fixed at 'Moore's thresher', a threshing machine out on a man's place, whose name was Moore. If 'Moore's thresher' were the name of a town, evidence of venue would have been sufficient. *Reed v. Territory*, 1 Okla. Cr. 492 [98 Pac. 583] 129 Am. St. Rep. 861. But under the rule laid down in the *Ed Brunson Case*, 4 Okla. Cr. 467 [111 Pac. 988], that there must be some evidence of venue, it was reversible error to not instruct the jury to return a verdict of not guilty, for the reason that the material allegations in the information had not been proven."

The court is of the opinion that the confession of error of the Attorney General should be sustained. There is an entire absence of proof of venue of this offense, except that it occurred, as stated in the Attorney General's confession of error, at "Moore's thresher." There is no showing of the location of Moore's thresher at the time this offense was alleged to have been committed, except that it was at a man's place by the name of Moore, but whether Moore's place was in Coal county, or in the state of Oklahoma, or in some other county or state, is not disclosed by the evidence. It appears, however, from the evidence, that whatever was said by the defendant was said in the neighborhood of a threshing machine.

This court will take judicial notice of the location and boundaries of counties and cities and towns within this state, but the location of a threshing machine at any particular time cannot be judicially noticed. There must be some more substantial proof of venue of a crime than

appears in the record of this case before this court can hold that the crime was committed within the jurisdiction of the trial court.

Further, the evidence that the defendant falsely, maliciously, and wantonly uttered the alleged slanderous language concerning Fannie D. Evans is very meager and unsatisfactory. In fact, the evidence of one of the state's witnesses only amounts to an insinuation that such slanderous language may have possibly been uttered by the defendant concerning the said Fannie D. Evans. The other witness introduced by the state does not in the least corroborate even the insinuations that such slanderous language was uttered by the defendant. The defendant as a witness testified positively that he did not utter any such language. He introduced several witnesses also, who testified to his good standing in the community as a law abiding citizen. He occupied the responsible position of postmaster in his home town.

In view of the apparent contradiction between the evidence on the part of the state and that of the defendant, and in view of the fact that no witness testified positively that the defendant uttered the alleged slanderous language, as charged in the information, concerning the prosecuting witness, and in view of the further fact that the testimony of the only witness who imputed such language to the defendant leaves it uncertain whether the defendant uttered such language of and concerning Fannie D. Evans, it would be a miscarriage of justice to affirm this conviction.

For the reasons stated, the confession of error of the Attorney General is sustained, and the judgment is

reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

DOYLE, P. J., and ARMSTRONG, J. concur.